United States District Court
Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11
12   GLORIA Q. NATIVIDAD, et al.,              Case No.: 3:12-cv-03646 JSC

13                       Plaintiffs,           **ORDER GRANTING DEFENDANTS'
                                               MOTION TO DISMISS PLAINTIFFS'**
14                                             **SECOND AMENDED COMPLAINT (Dkt.
                                               Nos. 77, 80, 83); DENYING PLAINTIFFS'**
15            v.                               **MOTION FOR ADMINISTRATIVE
                                               RELIEF (Dkt. No. 117)**
16
     WELLS FARGO BANK, N.A., et al.,
17
18                       Defendants.

19

20         Plaintiffs Gloria and Felicisimo Natividad ("Plaintiffs") bring this action against Defendants

21   Wells Fargo Bank, N.A. ("Wells Fargo"), First American Trustee Servicing Solutions, LLC ("First

22   American"), Newbury Place REO III, LLC ("Newbury"), BSI Financial Services ("BSI"), and

23   Patrick Lyman and Associates, LLC ("Lyman & Associates") for violation of the Fair Debt

24   Collection Practices Act (15 U.S.C. § 1692) ("FDCPA") and the National Housing Act (12 U.S.C.

25   §1707 *et seq.*) ("NHA"), for wrongful foreclosure, quiet title and cancellation of instrument, and for

26   declaratory relief.

27         Now pending before the Court is Defendants Wells Fargo, First American, Newbury and

28   BSI's (hereafter "Defendants" unless otherwise specified) Motions to Dismiss and Request for

Judicial Notice.  Plaintiffs have also filed a Motion for Administrative Relief for service on the California Secretary of State as agent for Lyman & Associates.  The served parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  Having carefully reviewed the parties' submissions, and having had the benefit of oral argument on April 25, 2013, the Court GRANTS Defendants' motions and DENIES Plaintiffs' administrative motion.

## BACKGROUND

The relevant facts, taken from Plaintiffs' Second Amended Complaint ("SAC"), documents incorporated into the SAC by reference and documents of which the Court takes judicial notice, are as follows.[1]

On November 20, 2007, Plaintiffs Gloria and Felicisimo Natividad obtained a loan ("Loan") secured by a deed of trust ("Deed of Trust").  (Dkt. No. 73 ¶ 4; *see also* Dkt. No. 83-1 at 9 [Exh. A].)  The principal sum was $1,080,000.00, the lender was Wells Fargo and the trustee was Fidelity National Title Insurance Company ("Fidelity National").  (Dkt. No. 73 ¶ 4.)  The Deed was recorded in Alameda County's real estate records and encumbered real property at 5536 Stockton Loop,

---

[1]  Defendants request that the Court take judicial notice of myriad documents relating both to the Property at issue and to additional properties owned by Plaintiffs.  (Dkt. Nos. 78 at 1-2; 83-1 at 1-7; 93 at 1-2.)  Federal Rule of Evidence 201(b) permits a court to judicially notice a fact if it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is also appropriate for "materials incorporated into the complaint."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  In their SAC, Plaintiffs explicitly incorporate the document assigning Wells Fargo's interest in the property to Newbury.  Plaintiffs also reference the Deed of Trust and the Notice of Default recorded by First American (including the attached Notice of Default Declaration made pursuant to California Civil Code § 2923.5).  (Dkt. No. 73 ¶¶ 4, 7, 9; Dkt. No. 83-1 Exhs. A, D, E.)  These documents are therefore properly subject to judicial notice and the Court notices them accordingly.

Defendants also request notice of the Substitution of Trustee form, both notices of sale, the Trustee's deed upon sale, and several other recorded deeds of trust not relevant here.  (Dkt. No. 83-1 at 2-3 [Exhs. C, F, G, H].)  Plaintiffs concede that the Court "may take judicial notice of public documents to determine <u>what</u> statements the document contains," but argue that "it is improper for the Court to take judicial notice of the truth of the statements in the Substitution of Trustee, or the adequacy of this form."  (Dkt. No. 89 at 10:1-9.)  The Court agrees.  Therefore, "[t]he Court shall take judicial notice of the existence of the documents and the date on which they were recorded.  However, for purposes of this motion, it shall not assume the truth of the facts therein."  *Sohal v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3842195, at *3 (N.D. Cal. Aug. 30, 2011).

Livermore, CA ("Property") which Plaintiffs allege is the home of themselves and their tenants. (*Id*.; *see also* Dkt. No. 83-1 at 9 [Exh. A].)

On April 22, 2010, a Substitution of Trustee form ("Substitution") was executed for purposes of replacing Fidelity National with First American. (Dkt. No. 73 ¶ 26; *see also* Dkt. No. 83-1 at 40-41 [Exh. C].) This Substitution was recorded in the Alameda County Records Office. (Dkt. No. 83-1 at 40-41 [Exh. C].) Plaintiffs dispute the Substitution's validity.

Approximately 16 months following the Substitution, on August 25, 2011, First American recorded a Notice of Default and Election to Sell in Alameda County. (Dkt. No. 73 ¶ 9; *see also* Dkt. No. 83-1 at 44-46 [Exh. D].) The Notice of Default indicates that Plaintiffs' arrearages, as of August 24, 2011, were $46,115.91. (Dkt. No. 83-1 at 44-46 [Exh. D].)

Wells Fargo assigned the Deed of Trust to Newbury approximately one month after the Notice of Default was recorded. (*Id.* at 48 [Exh. E].) The assignment was recorded in Alameda County on December 9, 2011 and as a result "the entire obligation … and all decisions regarding how to collect on this obligation were transferred to Newbury." (Dkt. No. 73 at ¶ 7; *see also* Dkt. No. 83-1 at 48 [Exh. E].)

On December 19, 2011, First American recorded a first Notice of Sale in Alameda County. (Dkt. No. 83-1 at 50 [Exh. F].) A second Notice of Sale was recorded on April 10, 2012. (Dkt. No. 84 at 3 [Exh. G].)

Lyman & Associates purchased the Property at the trustee's sale on October 29, 2012. (Dkt. No. 73 ¶ 9; *see also* Dkt. No. 84 at 6 [Exh. H].) Lyman & Associates subsequently retained Kevin Eikenberry, an attorney, "for the purpose of securing unspecified damages from plaintiffs for their allegedly unlawful detainer on the subject property." (Dkt. No. 73 ¶ 20.)

Nearly six months before Lyman & Associates purchased the property, Plaintiffs filed the present action in Alameda County Superior Court. Defendants subsequently removed the action to this Court. In previous orders, this Court approved substitution of Plaintiffs' attorney and dismissed Plaintiffs' First Amended Complaint pursuant to Defendants' motions to dismiss and Plaintiffs' informal request of the same. On December 5, 2012, Plaintiffs filed their SAC, against which the present motions to dismiss are submitted. The SAC presents five causes of action: (1) violations of

the Fair Debt Collection Practices Act ("FDCPA") brought against First American, BSI, and Wells Fargo; (2) violations of the National Housing Act ("NHA") against Newbury and Wells Fargo; (3) wrongful foreclosure against First American; (4) quiet title and cancellation of instrument against Lyman & Associates;[2] and (5) a prayer for declaratory relief.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

---

[2] Plaintiffs' fourth cause of action for quiet title and cancellation of instrument is brought only against Lyman & Assoc. However, Lyman & Assoc. has not filed a motion to dismiss, been served, or appeared in this action, and therefore Plaintiffs' fourth cause of action is not considered in this Order.

effectively"), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

### I.    Fair Debt Collection Practices Act

Plaintiffs' first cause of action claims violations of the FDCPA.  Specifically, Plaintiffs charge First American, BSI, and Wells Fargo with failing to send Plaintiffs the debt validation notice demanded by 15 U.S.C. § 1692g.  Plaintiffs also allege that First American and Wells Fargo "engaged in unfair and abusive debt collection practices as those terms are defined in 15 U.S.C. §1692e and f."  (Dkt. No. 73 at ¶ 17.)  In particular, Plaintiffs complain that First American and Wells Fargo "sought to collect over $75,000.00 in excessive and unlawful charges added to the amount of the loan during its origination [and] sought to collect both interest on the delinquent payments AND a late charge, thereby double dipping and over charging plaintiffs."  (*Id.*)  Plaintiffs further allege that BSI sought to collect payments under the loan without sending a debt validation notice, though they concede that they do not know whether BSI played a collection or merely accounting role in the collection of the "excessive charges."  (*Id.*)

Defendants raise several grounds for dismissal of Plaintiffs' FDCPA claim.  They argue that Plaintiffs' factual allegations fail to state a claim because they do not identify any actionable "debt collection" activity under the FDCPA, or adequately allege that Defendants are "debt collectors." Wells Fargo also contends that Plaintiffs' FDCPA claim against it is barred by the applicable statute of limitations.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors … and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  To state a claim under the FDCPA, Plaintiffs must allege facts showing that (1) Defendant was collecting a debt as a debt collector, and (2) its debt collection actions were violative of a federal statute.  *Schlegel v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100, 1103 (N.D. Cal. 2011) (citing *Jerman v. Carlisle*, 559 U.S. 573 (2010);15 U.S.C. § 1692 et seq.).

**A.      Whether Defendants are Exempted from the Act's Definition of "Debt Collectors"**

To state a FDCPA claim, Plaintiffs must allege that Defendants are "debt collectors" under Section 1692a(6).  The Act's definition of "debt collector" consists of a general definition followed by a number of exceptions.  *See* 15 U.S.C. § 1692a(6).  The exception that is relevant here excludes from the definition of debt collector "any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained." *See* 15 U.S.C. § 1692a(6)(F).  In addition, the FDCPA does not apply to creditors.  *Mansour v. Cal–Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009).  A creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).  Defendants move to dismiss the FDCPA claim on the grounds that they are exempted from the Act's definition of "debt collector."  The Court disagrees.

**1.      First American**

Regarding First American, it is unclear whether Plaintiffs' loan was "in default" prior to its involvement with the loan.  Plaintiffs argue that they were "in default" for purposes of the Act when their payments became delinquent; First American contends that Plaintiffs were only "in default" when the Notice of Default was filed on August 25, 2011.  Although Plaintiffs do not specify precisely when they were in default, Plaintiffs assert it occurred before the Substitution purporting to substitute in First American as trustee was executed on April 22, 2010.

As noted above, If Plaintiffs' debt was not "in default" when First American became the trustee, First American was not a "debt collector" and is not subject to the FDCPA. 15 U.S.C. § 1692a(6)(F)(iii).  "Although the Act does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue." *De Dios v. Int'l Realty & Inves.*, 641 F.3d 1071, 1074 (9th Cir. 2011).  While *De Dios* adopted a case-by-case approach to determining when a debt is "in default," the court noted that "[t]he Act's legislative history is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue." 641 F.3d at 1075 n.3.

Because Plaintiffs first articulated their argument at the hearing on the Motions, the parties have not briefed the issue.  Further, the Deed of Trust and the California non-judicial foreclosure statutes do not provide an obvious answer to the question.  Given that mere overdue payments may constitute a debt that is "in default," the Court concludes that First American has not met its burden on its motion to dismiss to show that the Plaintiffs' debt was not in default.

### 2.    Wells Fargo and BSI

As for Wells Fargo[3] and BSI, Plaintiffs allege that "[a]fter transferring all its rights, title, and interest in the subject property to Newbury, . . . Wells Fargo and BSI were retained as a debt collector . . . .  [Wells Fargo and BSI] sought to collect money from plaintiffs [and] regularly seek[] to collect funds on said delinquent loans . . . only after plaintiffs defaulted on the loan and the loan belonged to Newbury."  (Dkt. No. 73 ¶ 13.)  Both Wells Fargo and BSI contend that to the extent Plaintiffs allege that they were acting as loan servicers, Plaintiffs' claim fails because loan servicers are not considered debt collectors under the FDCPA.  Defendants, however, are not entirely correct. A debt collector does not include a loan servicer as long as the loan was not in default when it was assigned to the loan servicer.  *See Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1211 (N.D. Cal. 2012) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt,

---

[3]  Plaintiffs' allegations relate to Wells Fargo's activities after it assigned all its interest in the loan to Newbury.  For those activities occurring pre-assignment, Wells Fargo is unquestionably excluded from application of the FDCPA because it was the creditor at that time. *Schlegel*, 799 F. Supp. 2d at 1103.

United States District Court
Northern District of California

1   as long as the debt was not in default at the time it was assigned.") (quoting *Perry v. Stewart Title*

2   *Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *Distor v. U.S. Bank, N.A.*, 2009 WL 3429700, at *6 (N.D.

3   Cal. Oct. 22, 2009) (same); *London v. Aurora Loan Servs.*, 2010 WL 3751812, at *4 (N.D. Cal. Sept.

4   24, 2010) ("Here, because Aurora is a loan servicer, it is not a debt collector under the FDCPA

5   unless it acquired the loan after default, which would disqualify Aurora for the § 1692a(6)(F)(iii)

6   exemption."). Because Wells Fargo's and BSI's challenged activities occurred in the context of a

7   post-default assignment, their actions are not immune from the FDCPA pursuant to Section

8   1692a(6).

9   **B.   Enforcement of Security Interests as "Collecting Debt"**

10   The FDCPA defines a "debt" as a consumer obligation "to pay money." 15 U.S.C. §1692a(5).

11   "Debt collector" is defined as follows:

12   The term "debt collector" means any person who uses any instrumentality of interstate
   commerce or the mails in any business the principal purpose of which is the collection

13   of any debts, or who regularly collects or attempts to collect, directly or indirectly,
   debts owed or due or asserted to be owed or due another. . . . For the purpose of

14   section 1692f(6) of this title, such term also includes any person who uses any
   instrumentality of interstate commerce or the mails in any business the principal

15   purpose of which is the enforcement of security interests.

16

17   15 U.S.C. §1692a(6). Defendants assert that to the extent Plaintiffs' allegations relate solely to their

18   actions in pursuing non-judicial foreclosure, they are not collecting a "debt" and are not "debt

19   collectors" under the Act as a matter of law.

20   Although the Ninth Circuit has yet to address whether foreclosure proceedings constitute

21   "debt collection" within the ambit of the FDCPA, the majority of courts in this District, as well as

22   many other courts in this Circuit, have held that non-judicial foreclosure proceedings are not debt

23   collection.[4] These courts most often rely on *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188

---

24   [4] *See Dubose v. Suntrust Mortg., Inc.*, 2012 WL 1376983, at *2 (N.D. Cal. Apr. 19, 2012) ("[A]
   foreclosure sale resulting from an obligor's default on a deed of trust cannot be classified as 'debt

25   collection.'"); *see also, e.g., Zhang v. Countrywide Home Loans, Inc.*, 2012 WL 1245682, at *11
   (N.D. Cal. Apr. 13, 2012) (noting that district courts throughout the Ninth Circuit have determined a

26   foreclosure is not "debt collection" under the FDCPA); *Cromwell v. Deutsche Bank Nat. Trust Co.*,
   2012 WL 244928, at *2 (N.D. Cal. Jan. 25, 2012) ("[T]he FDCPA does not apply to the actions taken

27   by lenders or their agents when foreclosing on the lender's security interest under a deed of trust, in a
   non-judicial foreclosure of property."); *Garcia v. Am. Home Mortg. Serv., Inc.*, 2011 WL 6141047, at

28

(D. Or. 2002), a foreclosure case.  There, the plaintiffs argued that their creditor violated the FDCPA because it, among other things, did not possess an ownership in the deed of trust and thus any activity it took in connection with the foreclosure violated the FDCPA.  *Hulse*, 195 F. Supp. 2d at 1203 (characterizing plaintiffs' FDCPA claim as one for violation of 15 U.S.C. § 1692f(1), which prohibits as an unfair practice the collection of any amount unless expressly authorized by agreement or permitted by law).  The court rejected the plaintiffs' claim because "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."  *Id.* at 1204.  The court explained:

> A "debt collector" under the FDCPA is a person who collects or attempts to collect debts. 15 U.S.C. § 1692a(6).  A "debt" is defined in the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

*4 (N.D. Cal. Dec. 9, 2011) ("Non-judicial foreclosure does not constitute 'debt collection' as defined by the [FDCPA]"); *Garfinkle v. JPMorgan Chase Bank*, 2011 WL 3157157, at *3 (N.D. Cal. July 26, 2011) ("[While] the Ninth Circuit Court of Appeals … has yet to decide whether the act of foreclosing pursuant to a deed of trust is a form of debt collection … District courts in the Ninth Circuit have generally concluded that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the Rosenthal Fair Debt Collection Practices Act or the FDCPA."); *Geist v. OneWest Bank*, 2010 WL 4117504, at *3 (N.D. Cal. Oct. 19, 2010) ("Although the Ninth Circuit has not yet addressed whether a foreclosure action constitutes 'debt collection' under the FDCPA, district courts throughout the Ninth Circuit have concluded that it does not."); *Aniel v. T.D. Serv. Co.*, 2010 WL 3154087, at *1 (N.D. Cal. Aug. 9, 2010) ("[C]ourts throughout this circuit have concluded that foreclosure does not constitute "debt collection" under the FDCPA."); *Landayan v. Wash. Mut. Bank*, 2009 WL 3047238, at *3 (N.D. Cal. Sept. 18, 2009) ("[F]oreclosing on property pursuant to deed of trust is not an attempt to collect a debt for purposes of the FDCPA."); *Twombly v. Truckee Meadows Funding, Inc.*, 2012 WL 14023 at *2 (D. Nev. Jan. 4, 2012) (non-judicial foreclosure cannot be considered an attempt to collect a debt under FDCPA); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009) (finding that activity of foreclosing on property pursuant to deed of trust is not collection of a debt within the meaning of the FDCPA), *aff'd*, 384 Fed. Appx. 609 (9th Cir. Jun. 17, 2010)); *Ines v. Countrywide Home Loans*, 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008) (same); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) (same).

United States District Court
Northern District of California

1    *Id.* Thus, "any actions taken by [defendant] in pursuit of the actual foreclosure may not be

2    challenged as FDCPA violations." *Id*

3          The Circuits to have addressed the issue, however, have held that mortgage foreclosure does

4    qualify as debt collection for purposes of the FDCPA.  In *Glazer v. Chase Home Finance LLC*, 704

5    F.3d 453 (6th Cir. 2013), the Sixth Circuit reasoned that conduct qualifies as debt collection "if a

6    purpose of [that] activity taken in relation to a debt is to 'obtain payment.'"  *Id.* at 461 (citing

7    Black's Law Dictionary 263 (6th Ed. 1990); *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)).  The court

8    held that mortgage foreclosure falls within the scope of this definition because "*every* mortgage

9    foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the

10   underlying debt, either by persuasion (*i.e.*, forcing a settlement) or compulsion (*i.e.*, obtaining a

11   judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay

12   down the outstanding debt)."  *Id.*  The court also noted that remedies that are available in some

13   foreclosures—redemption rights, and deficiency judgments—"demonstrate that the purpose of the

14   foreclosure is to obtain payment on the underlying home loan."  *Id.*  Thus, concluded the court, a

15   person principally engaged in mortgage foreclosure falls within the Act's definition of debt collector.

16   *Id.; see also Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006) (holding that

17   the defendants' "foreclosure action was an attempt to collect a 'debt'" within the meaning of the

18   FDCPA); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) (holding that

19   communications made to collect a debt are covered by the FDCPA even if the debt is secured).

20         *Glazer*'s definition of "debt collection" makes some sense, as does the reasoning of those

21   courts that hold that merely enforcing a secured interest is not debt collection.  After carefully

22   reviewing these cases and the statute, the Court concludes that persons or entities whom plaintiffs

23   claim are regularly or principally engaged in debt collection through enforcement of secured interests

24   do not qualify as "debt collectors" under the Act.  The third sentence of the section 1692a(6)

25   definition of debt collector states:  "For the purpose of section 1692f(6) of this title, such term [debt

26   collector] also includes any person who uses any instrumentality of interstate commerce or the mails

27   in any business the principal purpose of which is the enforcement of security interests."  Section

28   1692f(6) prohibits "debt collectors" from "[t]aking or threatening to take any nonjudicial action to

effect dispossession or disablement of property if-- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."   15 U.S.C. § 1692f(6).  Thus, a person regularly or principally engaged in the enforcement of secured interests is not a "debt collector" under the Act.  To hold otherwise would render the third sentence of section 1692a(6) meaningless: there is no need to "also" include a person principally engaged in the enforcement of secured interests as a "debt collector" for the purpose of section 1692f(6) of the Act if the enforcement of secured interests qualifies as debt collection.  *See Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 888 (D. Minn. 2008) ("[I]f the enforcement of a security interest was synonymous with debt collection, the third sentence [of section 1692a(6)] would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts."); *Armacost v. HSBC Bank USA*, 2011 WL 825151, at *5 (D. Idaho Feb. 9, 2011) (holding that "if 'debt collection' generally included the enforcement of a security interest, the language specifying so for the purposes of § 1692f(6) would be surplusage"); *Jara v. Aurora Loan Servs., LLC*, 2011 WL 6217308, at *5 (N.D. Cal. Dec. 14, 2011) (finding *Armacost* persuasive and following its holding); *see also Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008) ("It is a well-established principle of statutory construction that legislative enactments should not be construed to render their provisions 'mere surplusage.'").  Thus, regardless of whether "debt collector" as defined in a dictionary can encompass the enforcement of secured interests, for purposes of the Act a "debt collector" does not include one engaged in the mere enforcement of security interests.

        *Glazer*'s contrary holding is unpersuasive.  *Glazer* held that one engaged merely in mortgage foreclosure activities could be considered a debt collector without rendering the third sentence of the debt collector definition surplusage.  Specifically, the court reasoned that the third sentence "operates to *include* certain persons under the Act (though for a limited purpose); it does not *exclude* from the Act's coverage a method commonly used to collect a debt."  *Glazer*, 704 F.3d at 463.  The court concluded that those persons the third sentence includes are people "who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an

effort to secure payment of debts." *Id.* at 464 (quoting *Piper*, 396 F.3d at 236).  The court further agreed with the Fourth Circuit, finding that "[t]his provision applies to those whose only role in the debt collection process is the enforcement of a security interest."  *Id.* (quoting *Wilson*, 443 F.3d at 373).  The court concluded:

> [o]ther than repossession agencies and their agents, we can think of no others whose only role in the collection process is the enforcement of security interests. A lawyer principally engaged in mortgage foreclosure does not meet this criteria, for he must communicate with the debtor regarding the debt during the foreclosure proceedings, regardless of whether the proceedings are judicial or non-judicial in nature.

*Id.*  Repossessors, the court reasoned, do not have to communicate with the debtor, since they "typically 'enforce' a security interest—*i.e.*, repossess or disable property—when the debtor is not present, in order to keep the peace."  *Id.*

Nothing in the Act supports *Glazer*'s conclusion that an entity cannot be considered an enforcer of security interests if there are communications between it and the debtor.  An entity, such as a trustee, is enforcing a security interest when it pursues nonjudicial foreclosure as much as a repossession agency is enforcing a security interest when it takes possession of a vehicle.  That entities pursuing nonjudicial foreclosure must provide statutorily mandated communications to debtors—such as a notice of default—does not automatically deprive them of their role as enforcers of security interests.  In addition, *Glazer* appears to assume that the third sentence only includes repossessors, as opposed to also excluding repossessors from the other provisions of the Act.  However, under the broad definition of "debt collection" articulated by the court, the activities of repossessors, as the activities of persons pursuing mortgage foreclosure, could fall within that definition.  After all, the ultimate goal of repossessing a vehicle is to pay down an outstanding debt—just as the ultimate goal of foreclosing on a mortgage is to satisfy the loan amount.  Thus, for the purpose of determining what actions comprise collecting debt, and therefore who qualifies as a "debt collector" under the Act, the actions of repossessors are not distinguishable from the actions of persons pursuing mortgage foreclosure.

The Court is also unpersuaded by *Glazer*'s reliance on Section 1692i, which requires a debt collector bringing a legal action against a consumer "to enforce an interest in real property securing

the consumer's obligation," e.g., a mortgage foreclosure action, to file in the judicial district where the property is located.  15 U.S.C. § 1692i(a)(1).  The court concluded that this provision supported its holding that mortgage foreclosure is debt collection because, "[a]lthough the provision itself does not speak in terms of debt collection, it applies only to 'debt collectors' as defined in the first sentence of the definition, which does speak in terms of debt collection." *Glazer*, 704 F.3d at 462. However, the court's conclusion "fail[s] to recognize that the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of a debt collector." *Kaltenbach v. Richards*, 464 F.3d 524, 528-9 (5th Cir. 2006) ("Under that subsection, a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector."); *see also* 15 U.S.C. § 1692a(6) ("who regularly collects or attempts to collect").  Thus, while the venue provision applies only to debt collectors, it does not follow that those debt collectors are debt collectors *because of* their mortgage foreclosure activities; they could be debt collectors because of other activities that qualify as debt collection under the Act.

The Court's holding here does not mean that all conduct taken in connection with enforcement of secured interests, including nonjudicial foreclosure, is exempt from the Act (except, of course, section 1692f(6)).  For instance, persons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors.  *See Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.*, 2010 WL 3769459, at *4 (N.D. Cal. Sept. 22, 2010) (denying motion to dismiss FDCPA claim where defendants' behavior "goes beyond mere foreclosure proceedings, as plaintiffs alleged that defendants repeatedly obfuscated the truth with regard to the loan amounts and payments"); *Wilson*, 443 F.3d at 376–77 (finding FDCPA applicable where law firm-defendant sent multiple correspondences to plaintiff that included the warning that the correspondence was an "attempt to collect a debt"); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (holding defendant liable under the Act where defendant sent a letter to plaintiff stating that the "Lender hereby demands full and immediate payment of all amounts due," and that "unless you pay all amounts due and owing under

the Note," attorney's fees "will be added to the total amount for which collection is sought"); *Piper*, 396 F.3d at 230 (rejecting defendant's argument that it was not subject to the FDCPA because it was simply enforcing lien where defendant wrote six letters demanding payment of the balance due and "made a number of telephone calls to the Piper residence in an effort to secure payment of the delinquent water service fees").[5]  Thus, while the Court rejects Plaintiffs' argument to the extent they assert that *all* actions related to nonjudicial foreclosure are considered debt collection, the Court also rejects Defendants' argument to the extent they contend that *any* action related to a nonjudicial foreclosure cannot be considered debt collection.  With these principles in mind, the Court turns to Plaintiffs' allegations.

Plaintiffs merely allege that First American filed a notice of default and that First American "sought payment on the loan."  (Dkt. No. 73 ¶¶ 9, 14.)  However, a notice of default is a statutorily required communication that must be provided to the mortgagor to enforce the security interest.  *See* Cal. Civ. Code § 2923.3.  Moreover, the vast majority of the notice of default comprises the precise language California law requires a foreclosing party to include in such notice.  *See id.* at § 2923.3(c)(1); (Dkt. No. 83-1, Ex. D).  Plaintiffs' insistence that First American was engaged in debt collection activity because the notice of default states "First American [] MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE" is unpersuasive.  (Dkt. No. 83-1, Ex. D at *2.)  Rather than establishing that First American was engaged in debt collection activity, this warning is consistent with the inconsistency in the caselaw regarding a mortgage foreclosure trustee's FDCPA liability. Because the notice of default is simply a communication required by law to enforce the security interest, and Plaintiffs do not allege that First American engaged in any other conduct, First American's challenged actions did not go beyond enforcing security interests.

---

[5] Plaintiffs' reliance on the Consumer Financial Protection Bureau's (CFPB) *amicus* brief filed in *Birster v. AHMSI*, 481 Fed. Appx 579 (11th Cir. 2012) is misguided.  The CFPB's brief does not stand for the "authoritative[] conclu[sion]" that non-judicial foreclosure of deeds of trust [is] 'debt-collection'" as Plaintiffs contend.  To the contrary, the CFPB goes to considerable lengths to make clear that "[t]he Court need not decide … whether foreclosure by itself constitutes debt collection activity covered by the Act" because  "[t]he [plaintiffs'] claims are not based on the foreclosure itself, but rather on [the defendant's] related attempts to induce the [plaintiffs] to pay amounts they owed." (Dkt. No. 90 at 37-38.)

1    Regarding Wells Fargo and BSI, Plaintiffs allege only that "[a]fter transferring all its rights,

2   title, and interest in the subject property to Newbury, . . . [they] were retained as a debt collector . . .

3   [,] sought to collect money from plaintiffs [and] regularly seek[] to collect funds on said delinquent

4   loans."  (Dkt. No. 73 ¶ 13.)  Plaintiffs' vague and conclusory allegations do not adequately allege

5   that Wells Fargo or BSI engaged in debt collection activities.  Plaintiffs do not explain why Wells

6   Fargo was "retained as a debt collector" after it assigned all its interest in the loan to Newbury.

7   Wells Fargo disputes that it had any involvement with Plaintiffs' loan post-assignment.  To be sure,

8   BSI acknowledges that it was given the servicing rights post-default and post-assignment, suggesting

9   that BSI may have continued servicing the loan, which includes collecting mortgage payments and,

10   perhaps, demanding payment in connection with the foreclosure.  However, in light of Plaintiffs new

11   allegation that they "are uncertain of the identity of the servicer" after Wells Fargo assigned the loan

12   to Newbury, (*id.* at ¶ 7), and given the absence of any factual allegations beyond the conclusion that

13   Defendants "sought to collect" money and funds, Plaintiffs have failed to allege facts that suggest

14   BSI and Wells Fargo were collecting a debt or otherwise qualify as "debt collectors" under the Act.

15   The Court cannot determine whether Plaintiffs' allegations are plausible without first receiving

16   "well-pleaded, nonconclusory factual allegation[s]."  *Iqbal*, 556 U.S. 662, 680.[6]

17    Because the Court concludes that legally-mandated actions required for mortgage foreclosure

18   are not necessarily debt collection, and that Plaintiffs have not adequately alleged that any defendant

19   engaged in any action beyond statutorily mandated actions for non-judicial foreclosure, the Court

20   concludes that Plaintiffs have not sufficiently pled a FDCPA claim and Defendants' Motion is

21   accordingly granted on this basis with leave to amend.

22   //

23   //

---

24   [6] Wells Fargo also asserts that because "Plaintiffs' claim against Wells Fargo is premised on
purported conduct at the origination of the Subject Loan in November 2007 [and because] [a]n

25   FDCPA claim must be brought 'within one year from the date on which the violation occurs' …
Plaintiffs' FDCPA claim is time-barred."  (Dkt. No. 83 at 9-10:17-4 (quoting 15 U.S.C. § 1692k(d).)

26   Plaintiffs' FDCPA claim, however, is based on conduct after loan origination.  While it is true that
Plaintiffs argue that a portion of the debt was improperly added to the loan balance at origination, the

27   debt collection activities alleged against Wells Fargo did not occur until after it assigned the loan to

28   Newbury.

United States District Court
Northern District of California

**C.      Whether Wells Fargo's and BSI's Actions Violated the FDCPA**

Even if Plaintiffs could allege that Wells Fargo and BSI were collecting debt as debt collectors, Plaintiffs' FDCPA claim still fails.  Plaintiffs identify two actions they allege violated the Act: (1) Defendants failed to send Plaintiffs the debt validation notice demanded by 15 U.S.C. § 1692g; and (2) First American and Wells Fargo "engaged in unfair and abusive debt collection practices as those terms are defined in 15 U.S.C. §1692e and f" by collecting "excessive and unlawful charges."  (Dkt. No. 73 ¶ 17.)  Neither claim includes sufficient factual allegations.

Section 1692g(a) requires a debt collector to send to the borrower within five days of the initial communication with the borrower in connection with the collection of any debt a written letter containing, among other things, the amount of the debt owed and the name of the creditor to whom the debt is owed.  If the borrower disputes the debt, the debt collector must cease all collection activity until the debt collector mails to the borrower a copy of the verification of the debt or the name or address of the original creditor.  15 U.S.C. § 1692g(b).  Here, Plaintiffs' SAC includes only the conclusory allegation that "[n]either . . . BSI [n]or Wells Fargo sent plaintiffs the Debt Validation Notice required by 15 U.S.C. § 1692."  (Dkt. No. 73 ¶ 16.)  Plaintiffs do not identify what triggered Defendants' duties under the statute.  Because section 1692g applies only to the initial communication, Plaintiffs' failure to allege that BSI and Wells Fargo did not send the notice following the initial communication requires dismissal of their claim.

Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Subsection (2)(A) provides it is a violation of that section to falsely represent "the character, amount, or legal status of any debt."  Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  This includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  *Id.* at § 1692f(1).

Here, Plaintiffs allege that "[w]hen this loan was made, Wells Fargo Bank charged plaintiffs over $75,000 in origination fees or points.  In addition, substantial additional fees were charged and

16

1  included in the $1,080,000.00 loan secured by the first deed of trust.  As a debt collector, First

2  American has attempted to collect these excessive and unlawful fees."  (Dkt. No. 73 ¶ 10.)  Plaintiffs

3  further allege that First American and Wells Fargo "have sought to collect over $75,000 in excessive

4  and unlawful charges added to the amount of the loan during its origination."  (*Id.* at ¶ 17.)  Plaintiffs

5  do not allege any facts that support their claim that any "fee" charged by Wells Fargo was unlawful.

6  In addition, to the extent Plaintiffs challenge these fees as "excessive," Plaintiffs have not identified

7  any section in the FDCPA that precludes collecting "excessive" fees.  Because Plaintiffs fail to allege

8  that any defendant's conduct violated Sections 1692e and 1692f, Plaintiffs' SAC must be dismissed

9  on this additional basis.[7]

10  **II.      National Housing Act**

11           Wells Fargo and Newbury challenge Plaintiffs' claim under the NHA on several grounds: (1)

12  that Plaintiffs "are required but fail to identify the particular statutory provision(s) that were

13  purportedly violated [and] fail to allege which of the numerous named defendants violated the

14  statutory scheme," (Dkt. No. 83 at 10:13-16); (2) that "the National Housing Act does not create a

15  private right of action…[n]or does the [NHA] create a right to a loan modification" (*id.* at 10:17-25;

16  Dkt. No. 80 at 7); and (3) "in the original complaint, Plaintiffs alleged that they received a permanent

17  loan modification" and thus, even if Plaintiffs had a private right of action or a right to a loan

18  modification, which Wells Fargo maintains they do not, Plaintiffs still have no claim (Dkt. No. 83 at

19  11:1-4).  Because the second argument disposes of this claim, the Court determines that there is no

20  need to address Defendants' first and third arguments.

21           Plaintiffs' claim under the NHA is, in effect, two distinct arguments.  Under the first,

22  Plaintiffs contend that the NHA applies to Wells Fargo and that they can bring suit under the statute

23  

---

24  [7] The Court declines to dismiss Plaintiffs' claim on the additional basis that it is barred by the statute
   of limitations.  Wells Fargo asserts that because "Plaintiffs' claim against Wells Fargo is premised on
25  purported conduct at the origination of the Subject Loan in November 2007 [and because] [a]n
   FDCPA claim must be brought 'within one year from the date on which the violation
26  occurs'…Plaintiffs' FDCPA claim is time-barred."  (Dkt. No. 83 at 9-10:17-4 (quoting 15 U.S.C. §
   1692k(d)).)  However, Plaintiffs' claim does not appear to be based solely on Wells' collection efforts
27  at the time of origination; rather, Plaintiffs appear to allege that Wells Fargo's collection efforts
   continued after origination.  Wells Fargo has accordingly not shown as a matter of law that Plaintiffs'
28  claim is time-barred.

1   for Wells Fargo's violation of the NHA.  The second argument, best characterized as a claim for

2   breach of contract, provides that the Deed itself requires Wells Fargo to abide by the NHA, and

3   Wells Fargo has breached the Deed by failing to satisfy the NHA.  Neither argument is availing.

**A.  The NHA Does Not Include a Private Right of Action**

5       In support of the first argument, Plaintiffs attempt to establish that the NHA provides for a

6   private right of action.  In particular, Plaintiffs cite to *Mathews v. PHH Mortg. Corp.*, 283 Va. 723

7   (2012) and *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (2012) to support the

8   proposition that "borrowers who defaulted on their FHA mortgages ha[ve] a private right of action

9   for National Housing Act violations."  (Dkt. No. 92 at 9.)  Not so.  To the contrary, *Pfeifer* "agree[s]

10  with the reasoning of those courts that hold that the [plaintiffs] cannot bring a private right of action

11  against the lenders."  211 Cal. App. 4th at 1269.  Moreover, both *Pfeifer* and *Matthews* concerned a

12  lender's ability to foreclose in the first instance, not the ability of the plaintiff to pursue damages

13  under the NHA.  *Pfeifer*, 211 Cal. App. 4th at 1255; *Mathews*, 283 Va. at 737.  Therefore, Plaintiffs

14  have not identified any authority that would cause this Court to abandon the cases in this District

15  which have held that the NHA does not provide for a private right of action.  *See, e.g.*, *Aguiar v.*

16  *Wells Fargo Bank, N.A.*, 2012 WL 5915124, at *3 (N.D. Cal. Nov. 26, 2012) ("[Defendant] argues

17  that … the NHA does not provide for a private right of action.  The Court agrees."); *Jara v. Aurora*

18  *Loan Servs. LLC*, 2011 WL 4536898, at *4 (N.D. Cal. Sept. 30, 2011) ("[T]he National Housing Act

19  governs relations between the mortgagee and the government, and gives the mortgagor no claim for

20  duty owed or for the mortgagee's failure to follow the statute or its implementing regulations.")

21  (internal quotation marks omitted); *Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of S.F.*,

22  724 F. Supp. 683, 690 (N.D. Cal. 1989) ("[P]laintiffs do not have a private right of action under the

23  National Housing Act.").

**B.  The Deed Does Not Incorporate the NHA**

25      Turning to Plaintiffs' second argument, Plaintiffs rely on paragraph 16 in the Deed and cite

26  recent caselaw for the proposition that the Deed "incorporate[s] by reference … the loss mitigation

27  provisions of the National Housing Act."  (Dkt. No. 73 ¶ 5.)  This argument posits that, pursuant to

28

United States District Court
Northern District of California

18

1    paragraph 16, Wells Fargo was contractually obligated to honor the terms of the NHA, even if they

2    were not otherwise governed by it.  Paragraph 16 reads, in pertinent part,

3           This Security Instrument shall be governed by federal law and the law of the
            jurisdiction in which the Property is located.  All rights and obligations contained in
4           this Security Instrument are subject to any requirements and limitations of Applicable
            Law.[8]  Applicable Law might explicitly or implicitly allow the parties to agree by
5           contract or it might be silent, but such silence shall not be construed as a prohibition
            against agreement by contract.
6

7

8    (Dkt. No. 83-1 at 21.)

9           Plaintiffs again cite to *Mathews*, 283 Va. 723, and *Pfeifer*, 211 Cal. App. 4th 1250, arguing

10   that these cases held that "borrowers who defaulted on their FHA mortgages ha[ve] a private right of

11   action for National Housing Act violations."  (Dkt. No. 92 at 9.)  Although *Mathews* and *Pfeifer*

12   found that the individual deeds at issue in those cases did bind the defendants to the provisions of the

13   NHA, they did so explicitly on the basis of facts not present here.  In particular, both cases

14   concerned loans insured by the Federal Housing Authority.  *Mathews*, 283 Va. at 728; *Pfeifer*, 211

15   Cal. App. 4th at 1264.  "For mortgages insured by the *FHA*, servicers are required to follow

16   servicing regulations mandated by the HUD Secretary before initiating foreclosure."  *Pfeifer*, 211

17   Cal. App. 4th at 1266 (emphasis added).  Plaintiffs acknowledge that the Deed at issue here was not

18   insured by the Federal Housing Authority, but argue that because the Deed was insured by a

19   different "agency of the Federal Government, specifically Fannie Mae," the same conclusion should

20   be reached.  (Dkt. No. 92 at 9:18-19.)  *Matthews* and *Pfeifer* did not hold that a mortgage insured by

21   *any* federal government agency must comply with the NHA; their holdings were based on

22   requirements specific to FHA insured loans.

23          Additionally, the deeds in both cases contained identical ninth paragraphs, which read, "[i]n

24   many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of

25   payment defaults, to require immediate payment in full and foreclose if not paid. This Security

26

27   _____
     [8] "Applicable Law" is defined as "all controlling applicable federal, state, and local statutes,
28   regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all
     applicable final, non-appealable judicial opinions."  (Dkt. No. 83-1 at 10.)

19

United States District Court
Northern District of California

instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Mathews*, 283 Va. at 734; *Pfeifer*, 211 Cal. App. 4th at 1265.  This language, *Mathews* found, "express[es] the intent of the parties that the rights of … foreclosure do not accrue under the Deed of Trust unless permitted by HUD's regulations ….  Accordingly, the references to HUD's regulations in the Deed of Trust are sufficient to incorporate them insofar as they prevent the [lender] from … foreclosing." 283 Va. at 734.  Here, however, the language of paragraph 16 does not reach the level of specificity contained in *Mathews*'s and *Pfeifer*'s paragraphs 9.  Paragraph 16 states only that the Deed is "governed by federal law and the law of the jurisdiction in which the Property is located." (Dkt. No. 83-1 at 21.)  This paragraph, unlike those in *Mathews* and *Pfeifer*, does not explicitly limit the lender's rights to only those procedures allowed by the Secretary, and therefore, it does not "express the intent of the parties that the rights of … foreclosure do not accrue under the Deed of Trust unless permitted by HUD's regulations."  *Mathews*, 283 Va. at 734.

Plaintiffs do not have a private right of action under the NHA.  The instant loan is not insured by the FHA, nor does the Deed explicitly incorporate HUD regulations.  Accordingly, Plaintiffs cannot maintain that they were entitled to loan modification procedures under *Mathews* or *Pfeifer*.  As a result, the Court DISMISSES Plaintiffs' claim under the NHA with prejudice.

### III.    Wrongful Foreclosure

Plaintiffs bring a wrongful foreclosure claim against First American, alleging that because the Substitution of Trustee form was void, "First American lacked authority to conduct the trustee sale or to execute the trustee deed." (Dkt. No. 73 ¶ 26.)  First American claims litigation privilege and challenges Plaintiffs' claim on the merits.

#### A.  Litigation Privilege for Trustees

First American contends that as a mortgage trustee with statutorily defined duties, their actions are protected by California's litigation privilege.  Plaintiffs do not dispute, or even mention this argument in their Opposition.  First American's argument is well-taken and supports dismissal of Plaintiffs' wrongful foreclosure claim.

California Civil Code Section 47 marks as privileged communications made in conjunction with any "legislative … judicial [or] other official proceeding authorized by law" as well as those

United States District Court
Northern District of California

made "without malice, to a person interested therein."  Cal. Civ. Code § 47(b), (c).  This privilege applies to all torts other than malicious prosecution, *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 29 (1997), and has been explicitly extended to the "mailing, publication, and delivery of notices [and p]erformance of [non-judicial foreclosure] procedures."  Cal. Civ. Code § 2924(d); *see also Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008) ("We hold that section 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common-interest privilege of section 47, subdivision (c)(1).").

There has been recent debate among the courts regarding whether Section 47's privilege, as applied to nonjudicial foreclosure proceedings, is absolute or qualified; that is, whether the privilege withstands evidence of malice.  *Compare, e.g.*, *Lykkeberg v. Bank of Am., N.A.*, 2012 WL 1099773, at *6 (N.D. Cal. Apr. 2, 2012) *with Boggs v. Wells Fargo Bank NA*, 2012 WL 2357428, at *4 (N.D. Cal. June 14, 2012).  The Court, however, need not engage in this debate: as First American correctly points out, Plaintiffs nowhere allege that First American acted with malice.

Pursuant to California's litigation privilege, the Court DISMISSES Plaintiffs' wrongful foreclosure claim against First American without prejudice.[9]

### B.  Wrongful Foreclosure on the Merits

Even if the litigation privilege did not apply, Plaintiffs' claim would still fail.  To establish an equitable cause of action to set aside a foreclosure sale, a plaintiff must demonstrate:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

---

[9] Because Section 47 is a state privilege, it applies only to state claims.  *Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808, at *12-13 (N.D. Cal. Aug. 29, 2011).  As a result, dismissal on these grounds only operates to dismiss Plaintiffs' wrongful foreclosure claim; it does not dispose of Plaintiffs' claim against First American for violation of the FDCPA.

*Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011).  As Plaintiffs fail to establish the first and second of these three elements, the Court dismisses Plaintiffs' claim for wrongful foreclosure on this additional basis.

### 1.  First Element: Illegal, Fraudulent, or Willfully Oppressive Sale

In order to set aside the foreclosure sale to Lyman & Associates, Plaintiff must first establish that "the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust."  *Lona*, 202 Cal. App. 4th at 104. *Lona* identified "[j]ustifications for setting aside a trustee's sale, … which satisfy the first element, include … proof that the trustee did not have the power to foreclose" as well as proof of "the trustee's … failure to comply with the statutory procedural requirements for the notice or conduct of the sale."  *Id.*

Plaintiffs first contend that "First American lacked authority to conduct the trustee sale or to execute the trustee deed in favor of Patrick Lyman and Associates LLC" because the Substitution of Trustee form was signed by an improper signatory.  (Dkt. No. 73 at ¶ 26.)  Plaintiffs also challenge the validity of the Substitution of Trustee form for invalid proof of service.  (*Id.*)  As described below, Plaintiffs fail to establish that First American caused an illegal, fraudulent or willfully oppressive sale on the grounds raised in their pleadings.

### a.  Execution of Trustee Substitution by an Attorney in Fact

Plaintiffs contest the validity of the Substitution of Trustee on the basis that it was executed by an employee of First American whereas "paragraph 24 in the deed of trust granted the power to sign this substitution exclusively to Wells Fargo and its employees."[10]  (Dkt. No. 73 at ¶ 26.)  In their Opposition, Plaintiffs contend that they are "entitled to insist on strict compliance with the

---

[10] Paragraph 24 of the Deed of Trust states, in pertinent part:

> [Wells Fargo], at its option, may from time to time appoint a successor trustee … by an instrument executed and acknowledged by [Wells Fargo] and recorded in the office of the Recorder of the county in which the Property is located. … This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

(Dkt. No. 83-1 at 24 [Exh. A].)

United States District Court
Northern District of California

1   procedure [specified in] paragraph 24," indicating a belief that paragraph 24 was drafted to

2   specifically preclude the type of substitution which occurred here.  (Dkt. No. 89 at 11:5-7.)

3          First American responds that under California Civil Code Section 1095, transfers of estates

4   may be effected by an attorney in fact, and that the Deed does not prohibit such substitution.

5   Therefore, it argues, the signatory Robert Bourne "need not be an employee of Wells Fargo … Mr.

6   Bourne executed it on behalf of First American, the attorney in fact for Wells Fargo."  (Dkt. No. 77 at

7   12:21-23.)  First American is correct.

8          Section 1095 allows for execution by an attorney in fact, requiring only that "[w]hen an

9   attorney in fact executes an instrument transferring an estate in real property, he must subscribe the

10  name of his principal to it, and his own name as attorney in fact."  *See Aceves v. U.S. Bank, N.A.*, 192

11  Cal. App. 4th 218, 231 (2011) (*as modified* Feb. 9, 2011) (finding that a lender's use of its attorney in

12  fact to sign a "Substitution of Trustee" was not an irregularity in the foreclosure process where the

13  trust deed did not preclude an attorney in fact from signing a Substitution of Trustee).  Courts tend to

14  enforce this regulation strictly.  For example, in *Mitchell v. Benjamin Franklin Bond & Indemnity*

15  *Corp.*, 13 Cal. App. 2d 447, 448 (1936), the court nullified a "deed executed in the name of an agent

16  and to which there [was] added, 'Atty in fact for (naming his principals).'"  Plaintiffs do not contest

17  that First American is the attorney in fact for Wells Fargo, nor do they mention First American's

18  Section 1095 argument in their Opposition.

19         The signature block of the Substitution of Trustee form, which Defendants contend comports

20  with Section 1095's requirements, reads:

21         Wells Fargo Bank, NA***

22         By First American LoanStar Trustee Services, LLC

23         Its Attorney in Fact

24          /s/_____

25         Robert Bourne, Certifying Officer

26  (Dkt. No. 83-1 at 41.)  Although it is not perfectly clear whether "Its Attorney in Fact" is meant to

27  refer to First American or to Mr. Bourne, this statement complies with Section 1095 and appears to

28  satisfy the requirements of paragraph 24.  Despite Plaintiffs' contention to the contrary, paragraph 24

United States District Court
Northern District of California

23

United States District Court
Northern District of California

of the Deed of Trust, while empowering Wells Fargo to execute a substitution of trustee, does not excessively restrict that ability such that Wells Fargo was precluded from executing the substitution through an attorney in fact. *See Sohal v. Fed. Home Loan Mortg. Corp.*, 2012 WL 6044817, at *7 (N.D. Cal. Dec. 5, 2012) ("Although neither the statute nor the Deed of Trust expressly give another entity the right to 'execute and acknowledge' a Substitution of Trustee, they also do not expressly preclude an attorney-in-fact from executing a Substitution of Trustee.").

### b.  Proof of Service

Plaintiffs also argue that the Substitution of Trustee form contains a proof of service which is defective for failure to conform to California Civil Code Section 2924b.  As Section 2924b relates exclusively to notices of default, the Court must assume that Plaintiffs are relying on either subsection 2934a(b) or (c) which require, in certain situations, notice of a trustee substitution to be mailed to the individuals, and in the manner, laid out in section 2924b.

However, the circumstances in which these provisions are binding do not appear here. Subsections (b) and (c) concern situations where "the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default" and where "the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale," respectively.  Cal. Civ. Code § 2924(b), (c).  But here, the Substitution was executed on April 22, 2010 and recorded on April 27, 2010.  (Dkt. No. 83-1 at 40 [Exh. C].)  The Notice of default was not recorded until August 25, 2011.  (Dkt. Nos. 73 ¶ 9; 83-1 at 44.)  Given the 16 months between recordation of the Substitution and the Notice of Default, First American was not obligated to mail copies of the substitution under Sections 2934a(b) or (c).  The affidavit challenged by Plaintiffs, therefore, cannot be deficient for failing to "identify the persons to whom she mailed the document, when she mailed it, or at which city and state she mailed the substitution of trustees."  (Dkt. No. 73 ¶ 26:14-16.)

### 2.      Second Element: Prejudice or Harm

"Irregularities in a nonjudicial foreclosure sale may be grounds for setting aside the sale if the irregularities are prejudicial to the party challenging the sale.  Thus, the party attacking the sale must allege that they were prejudiced or harmed by the violation."  *Aguiar v. Wells Fargo Bank,*

United States District Court
Northern District of California

*N.A.*, 2012 WL 5915124, at *5 (N.D. Cal. Nov. 26, 2012).  "The prejudice or harm element is met only if a plaintiff demonstrates that the foreclosure would have been averted but for the alleged deficiencies." *Albano v. Cal-W. Reconveyance Corp.*, 2012 WL 5389922, at *6 (N.D. Cal. Nov. 5, 2012).

 The facts in *Albano* are very similar to those here.  In particular, the plaintiff in *Albano* argued that due to an improper trustee substitution the foreclosure against her was wrongful.  On a motion to dismiss, however, the court found that because the plaintiff conceded that she "had defaulted on her mortgage payments, and would have been foreclosed on anyway" any irregularities in the substitution of trustee or in the foreclosure process itself were insufficient to establish prejudice or harm for purposes of a wrongful foreclosure claim.  *Id.* at *6.  Here, it is likewise true that Plaintiffs allege that they defaulted on their obligations.  Thus, applying the holding from *Albano*, any harm or prejudice Plaintiffs suffered through foreclosure was not the result of defects in the Substitution or the foreclosure sale.

 Also, as here, *Albano* relied on the fact that the foreclosure sale had already occurred to distinguish those cases which "held that the prejudice element of the wrongful foreclosure cause of action could be established by allegations that the wrong companies had initiated the foreclosure process." *Id.* (citing, e.g., *Sacchi v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 2533029, at *9–10 (C.D. Cal. June 24, 2011) (upholding the plaintiffs' wrongful foreclosure claim against an entity alleged to have no beneficial interest in the Deed of Trust when it acted to foreclose on the plaintiffs' home, when the foreclosure sale had not yet taken place); *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, at *14 (N.D. Cal. Dec.15, 2011) ("[T]he threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default.")).

### 3.    Third Element: Tender Rule

 In California, when a debtor is in default on a home mortgage loan, and a foreclosure has taken place, the debtor must allege credible tender of the amount of the secured debt to maintain a cause of action for wrongful disclosure.  *See U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (1985); *Albano*, 2012 WL 5389922, at *7.  "A valid and viable offer of

tender means that it is made in good faith, the party making the tender has the ability to perform, and the tender must be unconditional." *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009).  Tender is required "based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." *Dimock v. Emerald Props. LLC*, 81 Cal. App. 4th 868, 878 (2000).

Although Defendants challenge Plaintiffs' offer of tender on two substantive grounds (*i.e.*, that it is only an offer rather than actual tender and that Plaintiffs' offer is for an insufficient amount), Plaintiffs' claims actually fall under an exception to the tender rule and thus tender is not required.

> The exceptions to the tender rule are: 1) if the borrower's action attacks the validity of the underlying debt; 2) if the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary; 3) where it would be inequitable to impose such a condition on the party challenging the sale; and 4) where the deed is void on its face.

*Albano*, 2012 WL 5389922 at *7.  Here, as in *Albano*, the fourth exception applies.  As set forth above, Plaintiffs allege that First American lacked the authority to foreclose on Plaintiffs' home because they had been improperly substituted as the trustee and beneficiary of the Deed of Trust. Accordingly, the tender rule does not apply and the Court declines to dismiss Plaintiffs' claim on this basis.  *See Lona*, 202 Cal. App. 4th at 113 (holding that where the trustee's deed is void on its face, tender is not required); *Dimock*, 81 Cal. App. 4th at 878 (finding that sale under the deed of trust by a former trustee was facially void, and therefore tender was not required to sustain a cause of action); *see also Barrionuevo v. Chase Bank, N.A.*, 2012 WL 3235953, at *4 (N.D. Cal. Aug. 6, 2012) ("In *Dimock*, the California Court of Appeal held that where an incorrect trustee had foreclosed on a property and conveyed it to a third party, and the conveyed deed was not merely voidable but void, tender was not required."); *Christiansen v. Wells Fargo Bank*, 2012 WL 4716977, at *8 (N.D. Cal. Oct. 1, 2012) (declining to apply the tender rule on a motion to dismiss where plaintiff's theory of the case was that the trustee's sale was void, rather than voidable).

United States District Court
Northern District of California

IV.     **Declaratory Relief**

In their fifth cause of action, Plaintiffs request issuance of a stay in the state action brought by Lyman & Associates for wrongful detainer.  Plaintiffs also seek a declaration from the Court that they have good title to the Property and that they are entitled to possession of the Property such that they may not be evicted or liable for damages.

Declaratory relief is inappropriate where other adequate remedies are available to redress past conduct.  *Sohal v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3842195, at *10 (N.D. Cal. Aug. 30, 2011).  Moreover, a court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties.  *See Schlessler v. Keck*, 125 Cal. App. 2d 827, 837 (1954); *see also Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009).  Here, because the declaratory relief which Plaintiffs seek is commensurate with the relief they will achieve if they are successful on their fourth cause of action for quiet title and cancellation of instrument, this claim is duplicative and unnecessary.  In addition, to the extent Plaintiffs seek declaratory relief that is based on their wrongful foreclosure claim, Plaintiffs are not entitled to such relief because, as discussed above, their wrongful foreclosure claim fails.  The Court therefore GRANTS the motions to dismiss Plaintiff's claim for declaratory relief without prejudice.

V.      **Plaintiffs' Motion to Serve California Secretary of State**

Plaintiffs move under California Corporation Code Section 17061(c)(1) to serve the California Secretary of State as the implied agent for Lyman and Associates.  Given that Plaintiffs will need to re-plead the only remaining federal claim in this case—the FDCPA claim—the Court denies Plaintiffs' motion without prejudice.  If Plaintiffs cannot state a valid FDCPA claim, federal jurisdiction will no longer exist in this case, and the case may be remanded to state court.  Plaintiffs may re-file their motion if a valid FDCPA claim is alleged.

## CONCLUSION

In light of the foregoing, the Court GRANTS with prejudice Defendants' motions as to Plaintiffs' claim under the NHA.  In addition, the Court GRANTS without prejudice Defendants'

motions regarding Plaintiffs' FDCPA, wrongful foreclosure, and declaratory relief claims.  Finally, the Court DENIES without prejudice Plaintiffs' motion for administrative relief.

An amended complaint, if any, shall be filed no later than 20 days from the date of this Order.

**IT IS SO ORDERED.**

Dated:  May 24, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

28